108 N.J. Super. 54 (1969)
259 A.2d 922
LEO KAPLOWITZ, PETITIONER-APPELLANT,
v.
K & R APPLIANCES, INC., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1969.
Decided December 17, 1969.
*56 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. Alfred J. Hill argued the cause for petitioner (Messrs. Wilentz, Goldman & Spitzer, attorneys).
Mr. John S. Donington argued the cause for respondent (Messrs. Schneider & Morgan, attorneys).
The opinion of the court was delivered by CONFORD, P.J.A.D.
Both parties to this appeal agree that petitioner sustained a coronary occlusion causing a myocardial infarction on December 14, 1963 and a recurrence thereof on or about January 18, 1964, both work-connected, the December 14 incident directly and that of January 18 indirectly. The issue disputed below and here is whether later infarctions sustained by petitioner on October 18, 1965, June 30, 1967 and March 3, 1968 were also causally related to the employment. See Schiffres v. Kittatinny Lodge, Inc., 39 N.J. 139 (1963); Close v. Kordulak Bros., 44 N.J. 589 (1965). The Division of Workmen's Compensation held they were; the Essex County Court that they were not. Petitioner appeals.
*57 More precisely, the issue so resolved was whether the first[1] infarction caused or materially contributed to the occurrence of the later infarctions or whether the latter were due solely to the natural progression of the cardivascular, arteriosclerotic disease from which petitioner was suffering even prior to the first occlusion and infarction. Respondent impliedly concedes, and it would be our view, that if there was causal relation between the first and the three later infarctions, causal relation with work-effort is thereby established and petitioner becomes entitled to an award for the amount of disability existent after the last of the infarctions, which the proofs show to have been substantially greater than after the first.
The record shows hospitalizations for coronary infarctions sustained by petitioner for the following periods: (1) December 15, 1963 to January 12, 1964; (2) January 18, 1964 to February 23, 1964; (3) October 18, 1965 to November 10, 1965; (4) June 30, 1967 to July 15, 1967; and (5) March 3, 1968 to March 17, 1968.[2] After the first attack petitioner resumed his employment with respondent in Newark on a part-time basis in July 1964, but soon thereafter changed to a sedentary job nearer home averaging about six hours a day. This continued until his October 1965 attack. He returned to sedentary work on a two-three hours daily basis in April or May 1966 and continued thereat until the June 1967 attack. He returned to the same work in September 1967 and continued until November 1967, when he went to Florida for the winter on his doctor's advice. He sustained the March 1968 infarction in Florida. The hearings in this case concluded in April 1968.
Petitioner was attended by Dr. Klein, an internist and petitioner's family physician, during the entire period of *58 the coronary episodes involved in this case. Petitioner had a previous condition of mild hypertension, emphysema without serious symptoms and a chronic bronchial cough. During and after the 1963-1964 hospitalizations Dr. Klein was prescribing coronary vasodilators and anti-coagulants for the heart and other medications for the bronchitis. There were periodic office visits until the October 1965 attack. There were no visits between February 2, 1965 and August 16, 1965.[3]
At the hospital in October 1965 petitioner was given medications for the heart muscle and for thinning the blood and a diuretic to relieve congestion from fluid in the chest.
Between hospitalizations petitioner was receiving various medications to help his heart and circulation. By the time of the hearings he was also receiving nitroglycerin for relief of anginal symptoms.
Dr. Klein described the 1963-64 infarction as of the anterior-lateral wall (the hospital records say "anterior wall"); the October 1965 incident as concerning the "lateral wall"; and the June 1967 event, the anterior wall. He stated that electrocardiograms ("EKG," hereinafter) taken at different times between the 1963-64 and 1965 infarctions showed an essentially stable condition, but on cross-examination he would not say they showed the prior infarction to have been "healed" but only "healing." Yet on further cross-examination he conceded that a healed condition would be indicated by a period between "stable" EKG's. He also said that comparative EKG's on March 9, 1964 and August 31, 1964 (at some points in the record August 31, 1965 is the date given) reflected "as much healing as possible in the myocardial infarction."
Dr. Klein testified that the October 1965 infarction was a "fresh" one, in a "different portion of the heart" from the prior one, although contiguous thereto.
*59 Dr. Klein could not relate the October 1965 and later infarctions to the first or to the work effort, but stated: "I'm of the opinion that a man who has had one coronary is a better than average candidate to have another." However, he conceded this was a statistical conclusion based on the fact that "this is a degenerative disease which progressively worsens itself." At another point he said in relation to the October 1965 incident: "Certainly this is a recurrent myocardial infarction. Its absolute association with preceding history is  I can't testify to that."
Dr. Klein testified that, among other things, a January 19, 1964 EKG showed ischemia, meaning deficient oxygenation, due to inadequate circulation, and interference with heartmuscle function. He also said there were "bridging symptoms" of pain throughout the whole history of heart pathology here involved.
Dr. Rowland Goodman testified as examining expert for petitioner on the basis of a hypothetical question and examinations of the subject on January 11, 1966, September 19, 1967 and April 18, 1968. He testified that he felt the work effort in 1963 was related to the later heart attacks since it caused petitioner's condition to deteriorate more rapidly than it would have without it. He also stated the earlier heart attacks contributed to the 1965 one since the EKG's showed only a healing process and never an arresting of the healing. He had the same opinion in relation to the later infarctions. The fact that the attack was in a different part of the heart was irrelevant. But in giving his diagnosis as of the January 1966 examination he said "the patient was suffering from arteriosclerotic heart disease with healed myocardial infarction, coronary and cardiac insufficiency" (emphasis added). By September 19, 1967 the doctor found "an increasing degree of congestive heart failure," indicated by extension of rales in the lungs, as compared with the prior examination, and more rapid heart rate than previously.
It is notable that while Dr. Goodman testified that the entire pathological process as it developed all stemmed back *60 to the occlusion and infarction of December 1963, he gave no explanation in physiological terms for that conclusion.
Dr. Jack York, testifying as an expert for respondent, stated that his examination of the subject on January 12, 1966 showed a healed myocardial infarction and coronary insufficiency. There was no evidence of cardiac failure or enlargement. He testified that his examination of the hospital records reflected a "good recovery" from the 1963-64 infarction as well as from the 1965 one. The October 1965 episode resulted from the natural progression of the underlying arteriosclerotic disease, not from the 1963-64 incident "which had stabilized long before." Each successive infarction closed off a separate and distinct coronary artery and each (after the first) was attributable solely to the progression of the disease, not to any previous infarct. Most of the medication the petitioner was taking was for his arteriosclerotic condition, not for the infarction. Coronary occlusions, generally, are caused by arteriosclerosis, not by cardiac failure.
In granting recovery the judge of compensation did not specifically treat the issue as to whether the October 1965 and later infarctions were caused or materially contributed to by the initial infarction of 1963-64. He found the testimony of the petitioner's medical witnesses to be more "convincing and acceptable" and stressed that the "bridging symptomology * * * bespeaks causal relation." He found that the infarcts never "healed or stabilized, but were healing," but he did not say why he so concluded in light of the admissions of Dr. Klein, based on the comparative EKG's, to the contrary, and the testimony on that score by Dr. York.
Judge Antell, for the Essex County Court, found that petitioner had not established that the coronary occlusion and infarction of 1963 played a causal role in producing or contributing to the later incidents beginning with the infarction of October 1965. He found lacking in the testimony a medical explanation in physiological terms for the affirmative conclusion of Dr. Goodman, as required by Schiffres v. Kittatinny Lodge, Inc., supra (39 N.J., at 150). He accepted *61 the explanation of Dr. York that the later occlusions and infarctions were caused by the progressive arteriosclerotic condition unassociated with the work effort or the original occlusion and infarction. He consequently reversed the award insofar as it allowed for the increased disability arising out of the later infarctions.
The rule which must govern us on this review needs to be formulated on the basis of the approach taken in Close v. Kordulak Bros., supra (which decision also bears examination on the substantive issue here presented; see infra). That case involved review of concordant conclusions of the Division of Workmen's Compensation and the County Court allowing compensation in a heart case. The court abandoned previous judicial formulations imposing a duty of full review de novo on the Appellate Division in compensation cases and prescribed the same rule in that regard as that on appeal in any non-jury civil case, viz., "`whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering `the proofs as a whole' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility. * * * and, in the case of agency review, with due regard also to the agency's expertise where such expertise is a pertinent factor." (44 N.J., at 599).
It is apparent that the foregoing formulation is couched in terms peculiarly appropriate to a case where the tribunal under review has found in favor of the proponent of the litigated issue, as was the case in Close. It requires adaptation where the tribunal under review (here, the County Court) has found against the proponent of the issue. The finding here under review is that the proponent has adduced inadequate proofs, or proofs which are not creditable, as against creditable counter-proofs, so that in the ultimate the proponent has not borne its burden of establishing its case (causal connection between the original and later infarctions) by the preponderance of the probabilities on the believable evidence. We should strive, in that context as *62 well, to conserve the basic principle of Close  that the Appellate Division will ordinarily not undertake a review de novo and make an independent decision of the contested issue of fact but only decide whether the determination of the tribunal under review is reasonably supportable on the whole record before it. So guided, our function here is to examine the record for the purpose of determining whether the County Court conclusion is reasonably supportable on the whole record before it, in the light of the legal principles applicable, giving due regard to any conflicting findings of the Division of Compensation founded on either special expertise or a superior opportunity to appraise credibility of the witnesses.
Review here must, however, be attuned not alone to the evidence but to certain principles declared in two opinions of the Supreme Court involving compensability in heart cases, Schiffres and Close, both cited above. Schiffres is the more pertinent on the facts.
There petitioner's decedent had sustained a work-connected coronary occlusion July 1951 causing an infarction in the anterior wall of the left ventricle of the heart. In January 1955 he sustained a posterior-wall occlusion and infarction, and he died in his sleep in 1958. The issues were causal connection between the 1951 incident and, respectively, the 1955 occlusion and infarction and the death. More fundamentally, the crucial issue was causal connection between the two infarctions. 39 N.J., at 146. It was agreed that the decedent suffered from arteriosclerosis before and after the first infarction. Petitioner offered expert medical testimony to the effect that the first occlusion had impaired circulation in the area of the infarct which was not fully compensated for by the rise of collateral circulation; that the lessened circulation imposed a greater burden on the heart, and that the incidence of the second attack had to be causally attributed to the cardiac condition thus described. The theory advanced was essentially the same as the "statistical" opinion submitted by Dr. Klein in the present case, *63 i.e., that the victim of a coronary attack is a better candidate than other persons for another such attack.
The court criticized this approach on the ground that it was devoid of explanation of the mechanism by which the second infarction, not accompanied by any particular incident, was "physically" produced, as well as of the relation thereof to the first infarction (39 N.J., at 150, 152). See also, stressing the necessity in heart cases of explanation of causal relation in physiological terms, Dwyer v. Ford Motor Co., 36 N.J. 487, 494-495 (1962); Aladits v. Simmons Co., 47 N.J. 115, 124-125 (1966). While the court did not rule out the possibility of satisfactory medical proof in a particular case of causal connection between a given infarction and a later one, it mentioned with seeming approval the explanation given by respondent's expert  that when an infarct heals its "pathological effects have spent themselves"; that the resultant lowered cardiac reserve had no causal relation to the occurrence of the later infarct in a different part of the heart wall, the latter having been solely an emanation from the "progressively sclerotic coronary arteries" (39 N.J., at 152). The court found in the ultimate that respondent's position of absence of causal connection between the two occlusive infarctions was more persuasive than the contrary thesis (39 N.J., at 154), but not without heavy prior emphasis upon the untoward consequences of any tendency to treat a work-connected infarction as a guaranteed basis for recovery of additional compensation for any later infarction or death from infarction (39 N.J., at 146-147).
In Close v. Kordulak Bros., supra, the decedent suffered a compensable coronary occlusion and attendant myocardial infarction on September 9, 1959, and, as established by an autopsy, he died of heart failure, not from any new infarction, on August 3, 1961 (44 N.J., at 591, 600). In the interim he was able to work only six weeks, some time after the first attack, and at a very light job. The evidence showed that decedent's condition deteriorated "steadily and rapidly" after *64 the heart attack. There were repeated episodes of coronary insufficiency, four requiring hospitalization. Death was caused by congestive heart failure. The court found persuasive the testimony of three physicians, including the treating physician, that the original infarct "materially contributed to the subsequent severity and rapidity of the degenerative sclerotic process, the repeated attacks of coronary insufficiency and the ultimate acute and terminal heart failure." (44 N.J., at 600). Contrast Baginsky v. American Smelt. & Refin. Co., 88 N.J. Super. 69 (App. Div. 1965), certif. den. 45 N.J. 588.
In the instant case petitioner resorts to the claimed analogy of Close, respondent to that of Schiffres. Factually, the case at hand, viewed de novo, seems to fall between the two. But, as seen above, the procedural principles of Close call for appellant to demonstrate from the record unreasonableness in the findings and conclusions of the County Court of absence of causal contribution by the 1963-64 attack to that of October 1965 and the later ones. We think he has failed to do so.
From the proofs, although in some respects controverted, it could reasonably be found that there was recovery from and healing of the first infarct, and a stabilization of that particular condition well before the 1965 attack, notwithstanding the fact that the general arteriosclerotic condition progressed, with some attendant coronary insufficiency; that the 1965 occlusion and infarction were the results solely of the progress of the degenerative sclerotic process, not materially contributed to by the first infarction or by any direct sequela thereof; that no satisfactory medical evidence of causal relation between the two infarctions was adduced by petitioner; that there were periods of stabilization after the 1965 and 1967 infarctions; and finally that petitioner's 1965 and later coronary incidents were the result of his progressively degenerating arteriosclerotic condition, not related, directly or indirectly, to his work with the respondent corporation.
*65 In the light of the nature of the findings and conclusions of the judge of compensation, summarized above, as against the record, we cannot fault the County Court's conclusions on the basis of alleged failure to accord due weight to the former's expertise or opportunity to appraise credibility.
Judgment affirmed.
NOTES
[1] Throughout this opinion, references to the first infarction will connote the December 1963 and January 1964 incidents, taken together.
[2] We are informed petitioner has since died, but none of the circumstances are reflected by the record, and we consequently ignore that fact.
[3] These dates reflect correction by Dr. Klein of his earlier testimony mentioning a June 22, 1965 date rather than August 16, 1965.