171 N.J. Super. 82 (1979)
407 A.2d 1276
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
MARK SCHWEITZER, DEFENDANT.[1]
Superior Court of New Jersey, Law Division (Criminal).
Decided August 10, 1979.
*84 Ms. Elaine Zamula, Assistant Prosecutor, for the State (Mr. Alexander Lehrer, Monmouth County Prosecutor, attorney).
Mr. Timothy E. Whitney, Assistant Public Defender, for defendant (Mr. William J. Gearty, Deputy Public Defender for Monmouth County, attorney).
McGANN, J.S.C.
This matter was decided on August 10, 1979 with the reasons for the decision being placed orally on the record. The issue is rather novel. Because of that, counsel were advised that this formal opinion would be filed subsequently.
The State moves for an order to compel Mark Schweitzer to participate in a line-up. He has not been arrested; no formal charge has been brought against him. On July 8, 1978 one Peter Leone was the subject of a vicious attack. William Lancaster has been indicted and charged with atrocious assault and battery on Leone. The investigation of that crime indicated the presence of a second participant, as yet unidentified. The State believes that the victim or a separate witness to the incident might be able to identify Schweitzer as the other assailant if given an opportunity to view him in a line-up.[2] For that reason this application is made.
*85 The fact that the Prosecutor's Office saw fit to make the application at all is troublesome. It indicates a lack of appreciation of the proper role of the judiciary in the broad picture of law enforcement. Except for acting as the "neutral and detached" magistrate in connection with the issuance of search warrants, a court has no place in the investigation of criminal activity. That aspect of law enforcement lies solely with the executive branch. Despite current notions to the contrary, a court may act only when it has jurisdiction to do so.
Reduced to basic terms, jurisdiction of a court is the legal basis upon which judges exercise authority. Judges decide cases and issue orders and judgments which affect human beings in a fundamental way. They may do so only if they have "jurisdiction" over the subject matter to be decided and people to be affected. Jurisdiction is a power of government which, as each power of government, must have its genesis in the people governed. Jurisdiction of a court is essential to the concept of ordered liberty, for insofar as the people grant or withhold jurisdiction to or from their courts, to that extent are they more or less free. The judgment as to whether jurisdiction will or will not be conferred rests with the people; it cannot be arrogated to itself by a court, or even conferred upon a court by consent of the litigants. Therefore, unless a court is able to point to a grant of power by the people of the United States in their Constitution or the people of New Jersey in their Constitution, or to legislation enacted pursuant to Constitution by the representatives of the several states in Congress or by the representations of the people of this State in their Legislature, or to a recognized principle of the common law as it existed at the time of the American Revolution and still subsists  the court is powerless to decide, or order, or adjudge. See generally, Peterson v. Falzarano, 6 N.J. 447, 454 (1951); Abbott v. Beth Israel Cemetery Ass'n of Woodbridge, 13 N.J. 528, 537 (1953); State v. Osborn, 32 N.J. 117, 122 (1960); Peper v. Princeton *86 Univ. Bd. of Trustees, 77 N.J. 55, 65 (1978). 22 C.J.S. Criminal Law § 122 at 316.
For purposes of analysis, the concept of jurisdiction is divided into subject-matter jurisdiction and personal jurisdiction. Those cases set forth above were concerned with subject-matter jurisdiction, i.e., does the court have the power to hear and decide that type of case? As related to the facts of this application, it is obvious that the Superior Court of New Jersey does have subject-matter jurisdiction over an indictment charging the crime of atrocious assault and battery  should such indictment be returned against a particular individual. But just as obviously it has no jurisdiction over anything until an indictment is returned. In criminal law the jurisdiction of the Superior Court commences with the filing of an indictment and continues until the imposition of sentence upon one judged guilty through the judicial process. After sentencing the defendant is turned over to the custody of the Executive Branch to serve his sentence. State v. Ashby, 43 N.J. 273, 276 (1964); 21 Am.Jur.2d, Criminal Law § 376 at 398.
Jurisdiction over the subject matter which is obtained by the filing of the indictment does not give a court jurisdiction over the person so that an order may issue directing him to do some required act. In order to obtain jurisdiction over the person of the accused, "process" must be served on him. Gondas v. Gondas, 99 N.J. Eq. 473, 478 (Ch. 1926); Stevens v. Associated Mtg. Co. of New Jersey, 107 N.J. Eq. 297, 299 (Ch. 1930). When an indictment has been returned, unless the accused voluntarily submits to the jurisdiction of the court, a warrant for arrest  issued by a court having subject-matter jurisdiction  is the process. 72 C.J.S. Process § 1 at 982; 62 Am.Jur.2d, Process, §§ 1, 2 and 3 at 784, 785. Process without subject-matter jurisdiction is meaningless. In other words, the process must be "due" in a *87 14th Amendment sense.[3] What the Constitution prohibits is the deprivation of liberty without due process. That is precisely what the order sought here would do. There is no matter pending before the court. What the State seeks is judicially impossible. The motion is denied and the matter dismissed.
The State candidly concedes that it cannot show probable cause for a complaint against Schweitzer and the issuance of a warrant for his arrest. Were that done there would be a real risk of an abuse of process or false imprisonment action. To avoid that risk it seeks this order from a court which has no jurisdiction to grant it.
Passing the anomaly of the procedure used to bring the matter before the court, the prosecutor urges that the order sought should be granted on the merits, albeit with a different caption; that this court should adopt the Fourth Amendment approach used by the trial court in State v. Foy, 146 N.J. Super. 378 (Law Div. 1976), app.dis. without prejudice 153 N.J. Super. 503 (App.Div. 1977), and In re Investigation of a Multi-Vehicle Accident, 135 N.J. Super. 190 (Law Div. 1975), and by the Appellate Division in In re Fingerprinting of M.B., 125 N.J. Super. 115 (App.Div. 1973). The short answer in this case is that the hearsay affidavit of the prosecutor does not make out "probable cause." Therefore, the application must be denied. But even had the affidavit made out probable cause, the application would still have to be denied on the ground of lack of jurisdiction over subject-matter and person, as set forth above. The analysis of *88 what the court is asked to do from a Fourth Amendment viewpoint is not helpful.
Foy, supra, involved an application by the prosecutor for an order requiring two defendants under arrest on one charge to appear in a line-up to see if they could be identified in connection with another pending charge. The judge denied the application for want of a showing of probable cause (but intimated that upon such showing such order might issue).[4] The State's appeal in the case was dismissed without prejudice by the Appellate Division which, per curiam, said this:
In view of the fact that defendant is no longer in custody, the matters in issue have mooted. The appeal in its present posture is not the proper vehicle for a determination by us of the constitutional issues involved. [153 N.J. Super. at 504, 380 A.2d at 302]
In In re Investigation of a Multi-Vehicle Accident, supra, the prosecutor was investigating a hit-and-run accident. He applied for an order to arrest and detain one W. for the period not to exceed three hours for the purpose of taking his photograph so that it could be shown to potential witnesses as part of a photographic display to see if they could identify W as the driver of the hit-and-run vehicle. The trial judge denied the application, but again used a Fourth Amendment approach and held that no probable cause sufficient for the issuance of a search warrant was present.
In re Fingerprinting of M.B., supra, has facial similarities to this case. The question of the basic power of the trial court to issue the order in question was never raised. Rather, the Appellate Division conceived the case as involving Fourth Amendment questions and decided it on those principles.
*89 At the request of the Union County Prosecutor and during the investigative stage of a homicide, the Superior Court, Law Division, issued an order directing 21 eighth grade pupils to submit to the taking of their fingerprints by the Essex County Sheriff's Office. The Appellate Division affirmed the order. In so doing it relied heavily on the comments in Davis v. Mississippi, 394 U.S. 721, 727, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), which emphasized the very slight intrusion into personal security which the taking of fingerprints represents.
The Fourth Amendment succinctly provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
The strictures of the Amendment apply to arrest warrants as well as search warrants. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). Within those strictures, and in well-defined and limited circumstances, both warrantless arrests and warrantless searches are permitted. A court has nothing to do with initiating either. As part of the investigatory process a search warrant may issue but only after the application passes scrutiny of a neutral magistrate who determines that probable cause has been shown. Jurisdiction of the court (as distinguished from the function of a magistrate) need not have been established at that point. However, as has been demonstrated above, in order that an arrest warrant may issue, the subject matter jurisdiction of this court must first have been established by way of complaint (on probable cause) or indictment charging a particular individual who then is named in the warrant. In the case of an arrest warrant jurisdiction is more fundamental than a claimed Fourth Amendment violation.
*90 The foregoing is not to say that the State is to be frustrated in its legitimate investigative efforts. What it does say is that the court is not an investigative tool of the prosecutor. There is a valid way to accomplish what the State seeks and that is through the grand jury  the body duly constituted by the people to investigate criminal activity.
The grand jury is that unique creation of the common law which is not part of any of the three traditional branches of government. It is not a judicial creation. It is firmly embedded in our Constitution. A judicial officer, the assignment judge of the county, is given legislative duties in connection with the empanelling of the grand jury; he is there to render legal advice to it should it ask for the same. But the grand jury is not part of the Superior Court. It has the power to subpoena witnesses and, absent a valid Fifth Amendment claim, to compel testimony. It can compel Mark Schweitzer to appear; it can subpoena the victim and potential witness to appear at the same time; it can (subject to 14th Amendment objections) arrange to have others around Schweitzer and have the victim and potential witness ask whether they recognize the assailant among those present. Then the grand jury can decide whether to indict Mark Schweitzer or not. The cases which indicate the propriety of such procedure are these: United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). Those cases hold that Fourth Amendment principles do not apply to a grand jury subpoena but that Fifth Amendment rights do.[5] See also, In the Matter of Toon, 364 A.2d 1177 (D.C.App. 1976), cert. den. 429 U.S. 1099, 97 S.Ct. 1120, 51 L.Ed.2d 548 (1977); Wise v. Murphy, 275 A.2d 205 (D.C.App. 1971) and particularly the dissent at 218.
For the foregoing reasons the application is denied.
NOTES
[1] The caption itself is incorrect. As of the date of the hearing there was no matter pending before the court by way of criminal complaint or indictment entitled State v. Mark Schweitzer.
[2] The only matter submitted in support of the application is the hearsay affidavit of an assistant prosecutor which says nothing more than that set forth above.
[3] Where an arrest warrant is issued upon an indictment, the Fourth Amendment requirement of "probable cause" has been met by the action of the grand jury. Otherwise an arrest warrant can issue only after a finding of probable cause by a magistrate upon the filing or presentation to him of a sworn complaint. Absent such complaint, the magistrate, too, lacks subject-matter jurisdiction upon which he can base the issuance of process. 21 Am.Jur.2d, Criminal Law, § 441 at 444; 5 Am.Jur., Arrest § 7 and § 16 at 700 et seq. R. 3:3-1; R. 3:7-8.
[4] It should be noted that if facts were such as to demonstrate probable cause to believe they had committed the crime, a complaint could be signed, a warrant for arrest could issue and, after arrest, a line-up could be ordered in the usual fashion.
[5] Compelling a person to appear in a line-up does not infringe a Fifth Amendment right. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).