STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JAMES H. HALL, JR., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 15, 1981—Decided March 1, 1982.

Before Judges FRITZ, ARD and TRAUTWEIN.

*Seymour Gelzer* argued the cause for appellant (*Brigiani, Gelzer, Cohen & Schneider*, attorneys; *John P. Sade* on the brief).

*Frederick S. Cohen*, Deputy Attorney General, argued the cause for respondent (*James R. Zazzali*, Attorney General of New Jersey, attorney; *John J. Degnan*, former Attorney General of New Jersey, and *Frederick S. Cohen* on the brief).

The opinion of the court was delivered by

FRITZ, P. J. A. D.

Defendant was convicted by a jury of unlawful entry without breaking, armed robbery and unlawful possession of a dangerous weapon. He appeals. We affirm.

The most substantial of the seven issues forwarded by appellant as grounds for reversal centers around the pre-indictment requirement that Hall appear in a line-up. In this regard defendant relies solely on a trial court opinion, *State v. Schweitzer*, 171 *N.J.Super.* 82 (Law Div.1979).

More for the purpose of disposing of a collateral matter than to attribute significance to it, we note at the outset a sharp factual distinction between *Schweitzer* and the matter before us. In *Schweitzer* it is perfectly obvious that the prosecutor, in seeking defendant's appearance in a line-up, was on an undertaking commonly characterized as a fishing expedition. He came to court equipped with nothing more than a forlorn belief that "the victim or a separate witness to the incident might be

able to identify Schweitzer as the other assailant if given an opportunity to view him in a line-up. [Footnote omitted.]" 171 *N.J.Super.* at 84. In the matter before us there was ample in the record to support Judge Lane's conviction that "the State [had] established a well-founded suspicion of sufficient weight" respecting the culpability of defendant in the crime under investigation.

Nevertheless, the judge in *Schweitzer*—while specifically finding an absence of "probable cause"—did not choose to rest his denial upon the absence of justifiable and sufficient cause, but rather rested his determination on a perceived lack of jurisdiction. Convinced that he had jurisdiction over neither the subject matter nor the person, he opined that issuance of the order being sought, constituting a "deprivation of liberty," would offend due process. We are satisfied that whatever other considerations come into play, this is neither a matter of jurisdiction nor one implicating an unconstitutional "deprivation of liberty."

It is not necessary for us to spend much time in dealing with the parochial view that both subject matter and personal jurisdiction in the judicial branch are marked at their extremities by the indictment and the imposition of sentence, the essence of *Schweitzer*. Were this thesis sound, many, if not most, search warrants would never have issued. It is to a judicial officer to whom application must be made before most searches can be made, and this procedure is not only compelled but available before indictment. *State v. Kasabucki,* 52 *N.J.* 110 (1968). Group fingerprinting, as a preindictment investigative tool which we have heretofore ordered in certain circumstances (*In re Fingerprinting of M. B.,* 125 *N.J.Super.* 115 (App.Div. 1973)) would become unavailable and there might even be some reason to doubt the constitutionality of the delegation of authority in the New Jersey Wiretapping and Electronic Surveillance Control Act, *N.J.S.A.* 2A:156A–1 *et seq.* Were *Schweitzer* sound, postconviction relief application would have to be denied

for want of jurisdiction if sentence had been imposed and affirmed or the time for appeal had run. In this latter respect compare *State v. Robinson*, 148 *N.J.Super.* 278 (App.Div.1977). Indeed, even arrest warrants could not issue.

*Schweitzer* relies solely on *State v. Ashby*, 43 *N.J.* 273 (1964), for authority for the proposition that subject matter jurisdiction does not obtain until "once the grand jury has indicted a defendant." *Id.* at 276. We do not understand *Ashby*—an odd case in any event—to mean that. Rather *Ashby* stands for the proposition, as we read it, that without regard to the jurisdiction *vel non* of the court prior to indictment, once there is an indictment, the prosecutor loses any "discretion in the handling of criminal complaints." *Ibid.* Only two cases are cited in the *Schweitzer* opinion in connection with the obtaining of jurisdiction over the person: *Gondas v. Gondas*, 99 *N.J.Eq.* 473 (Ch. 1926), and *Stevens v. Associated Mtg. Co.*, 107 *N.J.Eq.* 297 (Ch.1930), aff'd o.b. 110 *N.J.Eq.* 70 (E. & A.1931)). Notably, these are both civil cases. It is interesting that in *Stevens* Chancellor Walker observes that process "need not necessarily be a subpoena or other writ, it may be an order or notice. Every state has the power to prescribe a reasonable notice which shall be given in order to subject a defendant to the jurisdiction of its courts. [Citation omitted.]" 107 *N.J.Eq.* at 299.

We are satisfied that the judicial branch has jurisdiction in criminal matters extending beyond the limits imposed by *Schweitzer*. *N.J.Const.* (1947), Art. VI, § III, pars. 2 and 3; *State v. Robinson, supra.* We expressly overrule that case. Here we need not and we think the courts should not construct perimeters of the judicial jurisdiction. When questions arise it will be sufficient to decide them on a case-by-case basis. The lack of instructive precedent demonstrates the rarity of the problem.

In this respect it is pointed out in the opinion in *Schweitzer*, which acknowledges the "facial similarities" between that case and *In re Fingerprinting of M. B., supra*, that "the basic power

of the trial court to issue the order in question was never raised" in *M.B.* (171 *N.J.Super.* at 88.) The same may be said of the search warrant cases, the post-conviction relief cases and the wiretap cases. Such a universal restraint suggests to us the lack of a serious issue in this regard.

■ Our conclusion that in the circumstances of this case the trial court had subject matter jurisdiction and obtained jurisdiction over the person of defendant makes it unnecessary to consider the effect of defendant's voluntary appearance through counsel at the hearing on the prosecutor's application for a line-up order upon any suggestion of a lack of jurisdiction over the person. *Cf. State v. Bierilo,* 38 *N.J.Super.* 581 (App.Div. 1956).

■ Obviously Fourth Amendment (to the *U.S. Const.*) considerations do come into play in a situation involving a compelled pre-indictment line-up appearance. But in our judgment the compelled exhibition of the physical characteristics of one's body presents no greater Fourth or, for that matter, Fifth Amendment problem than does the extraction of blood (*Schmerber v. California,* 384 *U.S.* 757, 86 *S.Ct.* 1826, 16 *L.Ed.*2d 908 (1966)) or the compelling of voice exemplars before a grand jury (*U. S. v. Dionisio,* 410 *U.S.* 1, 93 *S.Ct.* 764, 35 *L.Ed.*2d 67 (1973)).[1] As is pointed out in *Katz v. U. S.,* 389 *U.S.* 347, 351, 88 *S.Ct.* 507, 511, 19 *L.Ed.*2d 576 (1967), in a different context, "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Against the argument that detention for line-up purposes is, in itself, a Fourth Amendment intrusion, we rely on the wisdom of *Davis v. Mississippi,* 394 *U.S.* 721, 727, 89 *S.Ct.* 1394, 22 *L.Ed.*2d 676 (1969), teaching that such a detention, like that for fingerprint-

---

[1]The Fifth Amendment is not implicated in the matter before us. As is pointed out in a footnote in *Schweitzer, supra,* compelled line-ups have not presented a Fifth Amendment problem, at least since *U. S. v. Wade,* 388 *U.S.* 218, 87 *S.Ct.* 1926, 18 *L.Ed.*2d 1149 (1967). 171 *N.J.Super.* at 90, n. 5.

ing, "may constitute a much less serious intrusion upon personal security than other types of police searches and detentions." As is the case with fingerprinting, a compelled line-up "involves none of the probing into an individual's private life and thoughts that marks an interrogation or search." These and other considerations produced the holding in the First Circuit of the United States Court of Appeals which sanctioned as proper, *i.e.*, not unconstitutional, a compelled line-up appearance in response to a grand jury subpoena. *In re Melvin*, 550 *F.*2d 674 (1 Cir. 1977).

*Dionisio, supra*, suggests that where there is no infringement upon any interest protected by the Fourth Amendment, there may not even be a minimal requirement of "reasonableness" with respect to the basis for the action taken. 410 *U.S.* at 15, 93 *S.Ct.* at 772. *Davis, supra*, appears to be to the contrary in its requirement that, with respect to fingerprinting at least, the prior authorization of a judicial officer be obtained. 394 *U.S.* at 728, 89 *S.Ct.* at 1398. We are satisfied that the better rule is that enunciated by Judge Conford in *In re Fingerprinting of M. B.*, which requires judicial authorization on notice and a hearing sufficient to produce a reasonable suspicion, akin to probable cause, of defendant's probable implication in the crime being investigated. But we need not here set standards beyond saying that the procedure being reviewed passes muster. There was notice to defendant who appeared by counsel. There was evidence from which the judge might and did conclude, on express findings which might reasonably have been reached from the whole record (*State v. Johnson*, 42 *N.J.* 146 (1964)), that "the State has established a well-founded suspicion of sufficient weight to justify compelling Hall to submit to an in-person line-up." For the foregoing reasons we reject defendant's contention that the pre-indictment line-up violated his constitutional rights.

In this important matter we would be remiss if we were not to add our concurrence with that which might well have been the motivating conclusion of the author of *Schweitzer*. He

believed, and we concur, that the court is not and must not become "an investigative tool of the prosecutor." 171 *N.J.Super.* at 90. The probability of this occurring is inversely proportional to the concern of trial judges for the problem, their discernment of the issues and policies involved and their attention to detail in the fine balancing which is required in the situation. See for instance the excellent opinion of Judge Meredith in *State v. Foy*, 146 *N.J.Super.* 378 (Law Div.1976), app. dism. 153 *N.J.Super.* 503 (App.Div.1977).[2]

We turn to other issues. Defendant complains here, as he did below, that a new trial should have been ordered because of "the concealed relationship between a juror and two state's witnesses." The trial judge heard testimony on the post-verdict motion in the trial court over several days. At the termination of that testimony, and argument predicated thereupon, he concluded that the defense had "borne no burden of proof" with respect to his claim that the jury verdict should be overturned because of an undisclosed acquaintanceship between or among a juror and some witnesses. The findings upon which this was predicated, including the obvious and express difficulty the trial judge had respecting the credibility of defendant's witnesses, might reasonably have been reached upon sufficient credible evidence in the hearings and affidavits presented and wholly support the conclusion of the court that the jury verdict was not tainted by the acquaintanceship, if any. While these findings and conclusions might have been more articulately expressed,

---

[2]Beyond the poverty of its sole reliance on *Schweitzer* in respect to the foregoing issue, defendant's brief does not further identify the constitutional infirmity asserted other than to aver "a violation of Hall's constitutional rights for the reasons articulated in [*Schweitzer*]," and wholly ignores the fact that the constitutional argument was specifically eschewed by defense counsel at the hearing on the prosecutor's application for an order compelling defendant's appearance in the line-up. Such casual argument refuses us help to which we are entitled (*State v. Hild*, 148 *N.J.Super.* 294 (App.Div.1977)) and does a disservice as well to the client. If, on the other hand, the summary presentation is simply a device to preserve the issue for further appeal, it becomes a manifest demonstration of a lack of professional pride.

their purport is clear and one with which we cannot disagree. We take the unfortunate expression of the trial judge to the effect that he found his "mind in equipoise" as to mean nothing more than that, with due regard for the lack of credibility in defendant's witnesses, defendant's assertion had not been proved and the findings were necessarily nonproof or negative findings. In such case our obligation remains as it does with a review of affirmative factual findings: not to undertake a review *de novo* and to make an independent decision of the contested issues of fact, but rather only to decide whether the determination of the trial judge is reasonably supportable on the whole record before it. *Kaplowitz v. K & R Appliances, Inc.*, 108 *N.J.Super.* 54, 62 (App.Div.1969), certif. den. 55 *N.J.* 452 (1970). So viewed, the determination of the trial judge is unassailable.

Defendant believes himself entitled to a new trial based upon "newly discovered evidence." In his brief he acknowledges that such a motion should first be made to the trial court. Consistently with this acknowledgment, he has also moved before us for a new trial on the ground of newly discovered evidence or a remand to the trial court for the purpose of such a motion. We have heretofore reserved decision on that motion. We now determine that defendant is not entitled to a new trial on that basis since it is apparent to us that the "newly discovered evidence" was discoverable by reasonable diligence prior to the trial. As conceded by defense counsel on this appeal, with respect to evidence said now to be "newly discovered" but which was actually in the possession of an individual who, in fact, testified at the trial, "Unfortunately, no one (either the police or Hall's [trial] attorney) thought to ask him" about it. The balance of the testimony said here by defendant to support a new trial as being newly discovered is hearsay. Inasmuch as a new trial on this basis is not warranted, the remand for the making of such a motion is not warranted. The reserved motion is denied.

Defendant also argues:

The trial court erred in permitting in court identification of Hall.

The Monmouth County Probation Department erred when they recommended that the defendant be denied admittance to a pretrial intervention program.

It was reversible error to show mug shots of Hall.

It was error for the court to refuse to admit and consider testimony of Huff and the Rizzos at post trial proceedings.

We have considered these issues and the arguments made in respect thereto in the light of the entire record and with the application of appropriate legal principles. They are, in our judgment, clearly without merit. *R.* 2:11–3(e)(2).

Affirmed.