188 N.J. Super. 303 (1983)
457 A.2d 472
IN THE MATTER OF AN APPLICATION BY ROBERT M. MORGENTHAU, DISTRICT ATTORNEY, NEW YORK COUNTY, FOR AN ORDER TO COMPEL JEANNIE NASH AND MICHELLE EL GOHAIL TO PRODUCE HAIR AND BLOOD SAMPLES, FINGER AND PALM PRINTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 11, 1983.
Decided February 9, 1983.
*304 Before Judges MATTHEWS, ANTELL and FRANCIS.
Joseph H. Rodriguez, Public Defender of New Jersey, attorney for appellants Jeannie Nash and Michelle El Gohail (James K. Smith, Jr., Deputy Public Defender, of counsel and on the brief).
Robert M. Morgenthau, District Attorney, New York County, State of New York, attorney for respondent County of New York (Simon Rosenbach, Assistant Middlesex County Prosecutor, of counsel; Robert Pitler and Curtis E. Hall, Assistant New York County Attorneys, admitted pro hac vice, on the brief).
PER CURIAM.
This is an appeal from a trial court's order which would compel two New Jersey residents to supply hair and blood samples and finger and palm prints to police. These exemplars are contemplated for use in a criminal prosecution for murder in the State of New York.
*305 On October 12, 1982, the New York County District Attorney filed separate applications in the Law Division, Superior Court, Middlesex County, State of New Jersey, for orders directing Jeannie Nash and Michelle El Gohail,[1] two Middlesex County residents, to give blood and hair samples and finger and palm prints in connection with the investigation and prosecution of the murder of four persons in New York City. After a hearing on November 16, 1982, the trial judge granted the applications. Appellants, subjects of the application, filed a notice of appeal to this court after the trial judge stayed his own order pending appeal.
The facts which underlie and support the applications were presented to the trial court in the affidavit of Assistant District Attorney Gregory Wapels. For the purposes of our consideration of the matter on appeal, we may accept as true the contents of that affidavit, the substance of which is set forth in respondent's counter-statement of facts which we repeat at length.
On April 12, 1982, Margaret Barbera was abducted from a roof-top parking lot on a Westside pier in Manhattan. Three employees of the Columbia Braodcasting System, Leo Kuranoki, Robert Schulze, and Edward Benford, witnessed the abduction and tried to aid Ms. Barbera. Ms. Barbera's abductor shot and killed each of those three men with a single .22 caliber gunshot to the head. After subduing Ms. Barbera, the killer placed her in a late-model van. He then entered the van and drove from the pier. Investigators summoned to the scene found a .22 caliber shell casing near each of the three bodies on the pier.
The following day, April 13, 1982, Margaret Barbera's body was found in an alley in lower Manhattan. Ms. Barbera had been shot once in the head with a .22 caliber gun. In one of her hands was a human hair.
On April 19, 1982 Donald Nash was arrested by the State Police in Kentucky while driving a van similar to the one in which Ms. Barbera had been abducted. This van was owned by and registered to Donald Nash, of 81 Creek Road, Keansburg, New Jersey. At the time of the killings, Nash owned Rubin Construction Co., a New York company with offices located several blocks from the pier on which the murders took place. Donald Nash used the van in *306 connection with his business at the Rubin Construction Company. At night, he parked the van at his home in Keansburg, New Jersey.
Following Nash's arrest in Kentucky, a warrant authorizing a search of Nash's van was obtained in the United States District Court for the Eastern District of Kentucky on April 20, 1982. In executing the warrant, authorities discovered a .22 caliber shell casing, numerous bloodstains, latent fingerprints, and human hair similar to the hair found in Margaret Barbera's hand.
Examinations conducted by the Ballistics Section of the New York City Police Department's crime laboratory have established that the shell casing found in Nash's van and the three shell casings found near the bodies of the three CBS employees were fired in and ejected from the same gun. Serological tests conducted by the New York City Medical Examiner's Office reveal that there is a high statistical correlation  to the exclusion of 99% of the population  between Margaret Barbera's blood type and some of the bloodstains found in Nash's van. Other bloodstains found in the van do not match the known blood type of either Margaret Barbera or Donald Nash.
At some point, police officials discovered that Nash had repainted the van in the garage of his home on April 16, 1982, four days after the killings on the pier. Once the van was repainted, decals were affixed to its exterior. Latent fingerprints recovered from those decals have been identified as those of Donald Nash and Thomas Dane, a nephew of Nash.
On April 23, 1982, the home of Donald Nash, at 81 Creek Road in Keansburg, New Jersey, was searched pursuant to a warrant issued by the United States District Court for the District of New Jersey. During the execution of this warrant, authorities discovered two .22 caliber shell casings, a large number of fingerprints inside the garage, and a palm print. Ballistic tests have established that the shell casings discovered in Nash's home were fired from the same .22 caliber gun which fired and ejected the shell casing found in Nash's van and the shell casings found near the bodies of the three CBS employees.
Some of the fingerprints discovered inside the garage have been identified as those of Donald Nash and Thomas Dane. Other fingerprints and the palm print have not yet been identified.
On April 12, 1982, the date of the killings, Donald and Jeannie Nash, who are not married, were living together at 81 Creek Road, in Keansburg, New Jersey. They had been living at that address for several years.
Telephone records show that Donald Nash telephoned Jeannie Nash at their home in Keansburg shortly after the killings occurred.
Michelle El Gohail is the daughter of Jeannie Nash and the stepdaughter of Donald Nash. At the time of the killings, Michelle El Gohail was separated from her husband and lived in the Nash house at 81 Creek Road.
In August or September of 1982, the Nash home in Keansburg was sold. Jeannie Nash and Michelle El Gohail presently reside at # 8-F Parkwood Drive, Old Bridge, Middlesex County, New Jersey.
During the fall of 1982, a New York Grand Jury charged Donald Nash with four counts of Murder in the Second Degree (New York Penal Law § 125.25). Both Jeannie Nash and Michelle El Gohail testified before that grand jury and *307 have thereby received full transactional immunity with respect to these homicides.
Appellants first challenge the jurisdiction of the New Jersey court to enter the orders it made in this case. Counsel suggests that the "concept of jurisdiction is an inherent limitation on the power of the judiciary, and in the absence of specific statutory authority or a compelling state interest, the courts of this state cannot exercise subject matter jurisdiction." Accepting this premise, which is offered without cited authority, we are of the view that the existing rule and case authorities clearly support the jurisdiction of the trial court to act as it did in this instance.
First, the order of the trial court permitting the minimal invasion upon the persons of appellants is the functional equivalent of a search warrant. See In re M.B. Fingerprinting, 125 N.J. Super. 115, 122 (App.Div. 1973). As the New York Court of Appeals has noted, "[n]omenclature notwithstanding, if the application and the relief comport with all the requisites of a search warrant, it may be taken for what it is." In re Abe A., 56 N.Y.2d 288, 294, 437 N.E.2d 265, 268, 452 N.Y.S.2d 6 (1982).[2] There is, of course, a procedural difference in that applications to compel the production of physical exemplars are usually granted only after notice and hearing, rather than on an ex parte application, as is usually the case with a search warrant.
Secondly, our court rules specifically provide for the issuance of a search warrant in connection with evidence tending to show a violation of the penal laws of this State or any other state. R. 3:5-2. Finally, it is constitutionally permissible to issue search warrants in connection with a prosecutor's application to obtain material evidence from third parties who are not suspects in a criminal prosecution. See Zurcher v. Stanford Daily, 436 U.S. 547, 560 (1978), 98 S.Ct. 1970, 1978, 56 L.Ed.2d 525, 538 (1978); State v. Meighan, 173 N.J. Super. 440, 450 (App.Div. 1980), certif. den. 85 N.J. 122 (1980).
*308 Synthesizing the above, we hold that a sister state may obtain an order from a court of this State in the nature of a search warrant, directed to parties other than criminal suspects, for the purpose of obtaining exemplars such as those sought here. Of course, proceedings of this kind, akin to applications for search warrants, implicate the Fourth Amendment of our Federal Constitution and require a reasonable factual basis upon which to ground any order for the production of evidence such as the exemplars sought here.
Appellant's counsel argues that Standen v. Mark, 64 App. Div.2d 209, 409 N.Y.S.2d 851 (App.Div. 1978), suggests that there is no jurisdiction in our courts to issue the kind of order it did. Standen is not on point. It involved New York's statutory extradition law and the result in that case depended completely on the court's interpretation of that act. Counsel also asserts that In re Mahler, 177 N.J. Super. 337 (App.Div. 1981), certif. den. 87 N.J. 349-350 (1981), is applicable. He argues that the language in Mahler would suggest that our courts do not have jurisdiction to interfere in matters arising in other states. Mahler held that a New Jersey court could not act extraterritorially to suppress evidence which was to be used in a sister state's criminal prosecution. Id. 177 N.J. Super. at 345-353. The case has no relevance to the question in issue here.
The appellants contend that, assuming the court had jurisdiction, the trial court was in error in issuing its orders since the District Attorney did not demonstrate a reasonable suspicion that appellants had been involved in criminal activity. As we have indicated, an order such as the one under consideration here, is not to be denied on the basis that it was directed to a nonculpable third party. See Zurcher, 436 U.S. at 560, 98 S.Ct. at 1978, 56 L.Ed.2d at 538. As the Supreme Court noted in Zurcher, "[T]he State's interest in enforcing the criminal law is the same whether the third party is culpable or not...." Id. at 555, 98 S.Ct. at 1976.
*309 The probable cause necessary for the issuance of a search warrant relates to the existence of material and relevant evidence in connection with a violation of the penal laws of this State or any other state, which evidence tends to show any such violation. R. 3:5-2. The trial judge in this case found that the physical exemplars constituted material evidence relevant to Donald Nash's guilt. We agree with this finding. As the trial judge stated:
Forensic evidence seized from the deceased persons and a van have revealed physical specimens of blood, hair, finger and palm prints which require further investigation, both for exclusion and accusatory purposes. Respondents on this motion are New Jersey residents, and at the time of the making of this motion and service thereon were residents of Middlesex County. I am satisfied that there is sufficient information in the moving affidavit submitted by the New York District Attorney's Office to believe that these respondents may have had access to or contact with a van from which forensic evidence was seized and which is an important evidentiary item in the pending indictment.
We agree.
The trial judge balanced the privacy interest of the appellants and the effect of the minimal invasion of that privacy against the societal interest of an adequate prosecution for multiple serious criminal acts. The trial judge's conclusion that the societal interest should prevail is correct.
Affirmed.
NOTES
[1] These two individuals are not suspects in the New York murders. They appeared before the grand jury in New York and in fact have been given transactional immunity. Thus, the Fifth Amendment is not implicated at all in the proceeding in New Jersey. The matter essentially relates to Fourth Amendment questions.
[2] In In re Abe A. the State sought a blood sample from a suspect.