265 N.J. Super. 482 (1993)
627 A.2d 1157
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDDIE EUGENE ROLLE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 2, 1993.
Decided July 6, 1993.
*484 Before Judges PRESSLER, R.S. COHEN and KESTIN.
Zulima V. Farber, Public Defender, attorney for appellant (William Welaj, Designated Counsel, of counsel and on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Robert E. Bonpietro, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by KESTIN, J.A.D.
Defendant was convicted of murder and related offenses arising from an incident in which one person was killed and another seriously injured from gunshots fired into a crowd during a fistfight. Four persons, including defendant, were eventually charged. The incident occurred in the early morning hours of September 3, 1988. Investigators of the Burlington County Prosecutor's Office recovered two handguns and some descriptive information focusing on defendant and other suspects.
At about 2:45 p.m. on September 13, 1988 an "order authorizing investigative detention" was entered in the Law Division. The order, issued "ex parte upon an emergent basis," required defendant and two others to "furnish forthwith ... a full *485 set of fingerprints and palm prints and ... [to] cooperate in posing for a photograph depicting a frontal view of their faces...." The order also provided "that the detention of ... [the subjects] for purposes of photographing and fingerprinting ... shall not be for a period of time exceeding five hours...."
Shortly thereafter, at about 4:00, the investigative detention order was executed upon defendant. He was taken into custody, given Miranda warnings, and transported to the Burlington County Prosecutor's Office, arriving at approximately 4:20. Once again, Miranda warnings were read to defendant.
The investigators undertook a course of systematic interrogation lasting more than 3 hours, culminating in defendant's tape-recorded question-and-answer statement beginning at 7:43 and ending at 8:54. It was only then, at about 9:00, after five hours in custody, that defendant was photographed and fingerprinted.
At about 10:00, defendant was provided with food and drink. At about 11:00, a polygraph examination was administered to defendant. As a result of the polygraph, further questioning occurred and an additional taped statement was taken beginning at 12:50 a.m. and ending at 1:01.[1] Thereafter, defendant was taken to the Burlington County Jail.
It is clear that the attorneys and investigators of the Burlington County Prosecutor's Office misperceived the function and scope of investigative detention. In so doing, they applied far too generally and broadly a procedural device adopted for a limited and narrow purpose. The result was an inculpatory statement by defendant which should have been suppressed because it was obtained in an altogether invalid manner. The trial court's failure to suppress the statement requires a reversal of defendant's conviction.
*486 Manifestly, when the Supreme Court validated investigative detention orders in State v. Hall, 93 N.J. 552, 461 A.2d 1155, cert. denied, 464 U.S. 1008, 104 S.Ct. 526, 78 L.Ed.2d 709 (1983), and adopted R. 3:5A to establish the procedural mechanisms, it meticulously struck a fine balance between the State's interests in pursuing criminal investigations and the constitutionally protected privacy, liberty and personal integrity interests of all citizens upon whom criminal investigations might focus. The Court saw such orders as appropriate devices for assisting the police in limited ways and in closely defined circumstances. Because investigative detention orders were, by definition, to be directed against unarrested and uncharged suspects, however, they could be used only to compel lineups or other minimally intrusive identification procedures such as fingerprinting, photographing, and the taking of some exemplars. Id. at 562-64, 461 A.2d 1155; R. 3:5A-4.
The Court based its rationale on the premise that an investigative detention order might be needed and justifiable where probable cause to arrest is lacking. State v. Hall, supra, 93 N.J. at 554, 461 A.2d 1155. The authority to grant such orders "is founded on the judiciary's constitutional powers over searches and seizures," id. at 557, 461 A.2d 1155, and is invokable "to advance the investigation of criminal cases." Id. at 558, 461 A.2d 1155. It is "properly within the jurisdiction of the judiciary to ensure they are reasonable." Id. at 559, 461 A.2d 1155.
The showing required as a matter of Fourth Amendment protection to support the issuance of an investigative detention order is nevertheless different from, and at least under some circumstances, less demanding than, that required to validate a search warrant. See 3 Wayne R. LaFave, Search and Seizure, § 9.6(b) at 560-78 (2d ed. 1987). This is because the limited purposes for which such orders may permissibly be entered bespeak a lower level of intrusion on personal interests than is usually entailed in the issuance of a search warrant. It is clear, however, as a matter of state law, that a four-part showing must be made before an investigative detention order may issue.

*487 An order for investigative detention shall be issued only if the judge concludes from the application that:
(a) a crime has been committed and is under active investigation, and
(b) there is a reasonable and well-grounded basis from which to believe that the person sought may have committed the crime, and
(c) the results of the physical characteristics obtained during the detention will significantly advance the investigation and determine whether or not the individual probably committed the crime, and
(d) the physical characteristics sought cannot otherwise practicably be obtained.
[R. 3:5A-4]
State v. Hall, supra, 93 N.J. at 562, 461 A.2d 1155.
We do not address whether the showings made in this case satisfied the substantive criteria of R. 3:5A-4 to validate the issuance of the investigative detention order. Nor do we address the issue whether the circumstances satisfied the R. 3:5A-3 and R. 3:5A-6 requirements for issuance "ex parte upon an emergent basis", i.e., without the prescribed notice of at least 36 hours. The record before us has not been adequately developed to permit determination of these issues. Nor do we address whether defendant's Fifth and Sixth Amendment rights to counsel were violated, or the letter or spirit of R. 3:5A abrogated, because 1) he was taken into custody when alighting from an automobile to enter his lawyer's office, a destination known to the police officials involved; and 2) he was interrogated at the Burlington County Prosecutor's Office notwithstanding his attorney's requests during the interrogation process to be permitted to communicate with defendant.
None of the foregoing issues need be addressed because it is clear that the conduct of the prosecutor's personnel that produced defendant's inculpatory statement exceeded both the specific authority granted in the order under which they were functioning and the general scope of investigative detention orders authorized by R. 3:5A. It is of no moment whether or not the police officials had probable cause to arrest. Cf., State v. Young, 87 N.J. 132, 145, 432 A.2d 874 (1981). The permissible scope of the order which authorized them to take defendant into custody was clearly *488 exceeded and its fruits must be excluded from the jury's consideration.[2]
The permissible scope of investigative detention orders is limited to minimally intrusive police conduct with a view to achieving narrowly defined goals. See State v. Hall, supra, 93 N.J. at 562-563, 461 A.2d 1155. The detention "must be accomplished in a fashion designed to produce the least amount of harassment of, interference with, or prejudice to the suspect." Id. at 564, 461 A.2d 1155. Among its other requirements, the detention should be brief in duration, should not require the defendant to perform a creative act or give evidence not otherwise readily visible, and should not entail interrogation. Id. at 566, 461 A.2d 1155. Each of these limitations was ignored in this case.
As summarized in R. 3:5A-1, investigative detention orders may be used only to compel a defendant "to submit to non-testimonial identification procedures for the purpose of obtaining evidence of his or her physical characteristics...." Police investigatory procedures undertaken pursuant to the authority of an investigative detention order which exceed this narrow scope are not only literally unwarranted but also abuse a closely demarcated process designed for limited salutary purposes. Evidence obtained as a result of such conduct must be suppressed.
Reversed and remanded.
NOTES
[1] Sometime before the additional statement was taken, at about 11:30, personnel of the Prosecutor's Office sought and procured an arrest warrant.
[2] The narrow scope of permitted investigation under R. 3:5A alone imposes the limitation. Accordingly, considerations of good faith or intention at the time the order was applied for are not pertinent. In the same vein, whether or not Miranda rights were properly afforded is beside the point. The treatment to be accorded unsolicited statements made in the course of permitted procedures under investigative detention orders remains to be addressed on a case by case basis, however.